UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JEFFREY R. WHITSON,            )
            Plaintiff,          )
                                )
      v.                        )          CIVIL NO. 1:08-CV-292
                                )          (Mattice/Carter)
                                )
MICHAEL ASTRUE,                 )
Commissioner of Social Security, )
            Defendant.          )

                    REPORT AND RECOMMENDATION

      This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner of Social Security denying the plaintiff

supplemental security income under Title XVI of the Social Security Act.

      This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule

72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the

disposition of:

      (1)      The plaintiff's Motion for Judgment on the Pleadings (Doc. 11).

      (2)      The defendant's Motion for Summary Judgment (Doc. 13)

      For the reasons stated herein, I RECOMMEND the decision of the Commissioner

be AFFIRMED.

                    Application for Benefits

      Plaintiff filed an application for Supplemental Security Income disability payments

("SSI") on May 5, 2004, alleging disability beginning November 1, 2003. However, the relevant

time frame for consideration begins from the SSI filing date and not the alleged onset of

1

disability. An SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. See 20 C.F.R. §§ 416.330, 416.335. Plaintiff alleged disability due to cervical and lumbar pain, left knee pain, right shoulder pain, bipolar disorder, and hypertension (Tr. 141), although in his brief he only discusses his allegations of cervical and lumbar pain and left knee and right shoulder pain (Doc. 12, Plaintiff's Memorandum at 3-6).

After holding an administrative hearing, Administrative Law Judge (ALJ) John F. Proctor issued a decision on June 13, 2008 finding that Plaintiff was not disabled because he retained the capacity to perform sedentary level work (Tr. 20-21). On November 7, 2008, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner (Tr. 5-7). See 20 C.F.R. § 416.1481. This Court has jurisdiction of the action under 42 U.S.C. § 405(g).

<u>Standard of Review - Findings of ALJ</u>

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability. *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once the claimant makes a prima facie case that he cannot return to his former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588,

2

595 (6th Cir. 1975).   "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

As the basis of the administrative decision of June 13, 2008, that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since May 15, 2004, the application date (20 CFR 416.920(b) and 416.971 *et seq*).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, avascular necrosis of the left shoulder, and osteonecrosis of the left knee (20 CFR 416.920(c)).

3

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 416.967(a).

5.      Based upon consideration of the entire record, I find the claimant has the residual functional capacity to perform sedentary work. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.      The claimant was born on November 3, 1961 and was 42 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960 (c) and 416.966).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since May 5, 2004, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14-21).

<u>Issue</u>

Plaintiff raises one issue:

Whether the ALJ's credibility determination is unsupported by substantial evidence.

4

<u>Relevant Facts</u>

<u>Vocational Information</u>

Plaintiff was 47 years old on the date of the ALJ's decision and had a high school education (Tr. 20). He had past relevant work experience as a farm and construction worker (heavy, semi-skilled); painter (medium, semi-skilled); and janitor (heavy, unskilled) (Tr. 20).

<u>Relevant Medical Evidence</u>

In May 2004, Plaintiff saw his primary care physician, Rory Justo, M.D., for a cholesterol check (Tr. 199). Upon exam, Dr. Justo noted that while Plaintiff had back pain and myalgias, he had a supple neck with full range of motion, and normal gait with no tenderness in his major joints (Tr. 197-99).

In June 2004, Plaintiff saw Dr. Justo with complaints of low back pain, which he reported radiated to his forearms and feet (Tr. 194). He reported some pain relief with muscle relaxants and narcotic pain medication (Tr. 194). Upon exam, Dr. Justo noted that while Plaintiff had back pain and myalgias, he had no arthralgias or joint stiffness and he had a supple neck with full range of motion, and normal gait (Tr. 192-94). Dr. Justo prescribed pain medication and a muscle relaxant and noted that Plaintiff was followed by a back specialist (Tr. 192).

In July 2004, Plaintiff saw Thomas F. Mullady, M.D., for a consultative physical examination, at the request of the Social Security Administration (SSA) (Tr. 144-46). Plaintiff's chief complaint was 'severe back pain' which he reported radiated into both legs (Tr. 144). Plaintiff reported that he had numbness in his feet and had a loss of sensation (Tr. 144). Upon examination, while Dr. Mullady found Plaintiff to have decreased range of motion in his lumbar spine, he was able to straight leg raise to 80 degrees bilaterally in the supine position (Tr. 145).

5

Otherwise, range of motion testing was normal in all joints throughout (Tr. 145). His neck exam was normal (Tr. 145). His gait was slow with a limp (Tr. 145). Muscle strength in his lower extremities was almost normal (at +4), while his upper extremity strength and grip were completely normal (Tr. 145). Deep tendon reflexes were normal although there was a complete lack of sensation over the surface of both legs (Tr. 146). However, Dr. Mullady noted that Plaintiff's balance was normal (Tr. 146). Dr. Mullady opined that, based on his clinical examination findings, Plaintiff could occasionally lift and carry up to 10 pounds and frequently lift and carry less than 10 pounds; stand/walk for two hours in an eight-hour workday; and sit with normal breaks for a total of about six hours in an eight-hour workday (Tr. 146).

In August 2004, state agency reviewing physician, Robert E. Burr, M.D., reviewed the record and opined that Plaintiff could perform light level work (i.e., occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, and stand, sit, and walk about six hours in an eight-hour workday) (Tr. 148, 152). Dr. Burr cited Dr. Mullady's clinical examination findings in support of his assessment (Tr. 151-52).

In October 2004, Plaintiff saw orthopedist W.H. King, Jr., M.D., regarding his complaints of back and left knee pain (Tr. 305). Dr. King noted that Plaintiff would see pain management physician, Scott Hodges, D.O., in December 2004 (Tr. 305). Regarding his left knee, Plaintiff reported that it would give way without warning and that it would swell and ache (Tr. 305). Upon exam, Dr. King found Plaintiff's knee to have full range of motion with some crepitus (Tr. 305). While x-rays showed no significant abnormality, Dr. King diagnosed a tear of the medial meniscus (Tr. 304). An MRI done later that month confirmed Dr. King's diagnosis (Tr. 304). As such, Dr. King performed a left knee arthroscopy soon thereafter (Tr. 303-04).

6

In early November 2004, Plaintiff saw Dr. King for a follow up after his knee surgery (Tr. 303). Plaintiff reported that he was "pleased" and that he was doing "much better" (Tr. 303). Plaintiff declined Dr. King's recommendation for outpatient physical therapy (Tr. 303).

In December 2004, Plaintiff agreed to undergo physical therapy for his knee. After the completion of therapy, Plaintiff reported that his knee felt "much better" (Tr. 300). Dr. King observed Plaintiff to have excellent range of motion in his knee (Tr. 299).

Later in December 2004, Plaintiff saw Dr. Hodge's physician assistant (PA) at the Center for Sports Medicine and Orthopaedics for an evaluation regarding his complaints of back pain, at the referral of Dr. King (Tr. 349-51). Plaintiff reported that no litigation was involved and that, for a typical day, he rated his pain at a level of 10 on a scale of 0 - 10 (Tr. 351). Upon exam, the PA observed that while Plaintiff had tenderness to palpation of his paraspinous muscles, he had no muscle spasms or atrophy, his straight leg raising was negative, his lumbar flexibility was good, and he had normal motor strength (5/5) in all of his lower extremity muscles (Tr. 349). The PA also found that Plaintiff could ambulate independently with no antalgic gait, he could heel and toe walk bilaterally, and his deep tendon reflexes were symmetrical and normal (Tr. 349). The PA reviewed Plaintiff's February 2004 lumbar MRI results which showed that Plaintiff had a moderate central disc herniation with no impingement on existing nerve roots at L5-S1; mild impingement on lower exiting nerve roots within lateral recesses at L5-S1; a mild central disc bulge at L4-5, but with no impingement on existing nerve roots or significant spinal stenosis; and diffuse disc desiccation at L4 and L5 (Tr. 350). The PA recommended continued pain management, a repeat lumbar MRI, and an EMG of Plaintiff's back and legs (Tr. 350).

Also later in December 2004, Plaintiff underwent a repeat lumbar spine MRI (Tr. 361-

62).  The results showed that Plaintiff had a moderate sized posterior disc extrusion at L5-S1

which resulted in marked to severe stenosis which most likely compromised the right and left S1

nerve roots; mild spinal stenosis of the L4-5 level secondary to posterior annular bulge and small

central disc protrusion; and an old anterior wedge compression fracture of L1 with approximately

50% loss of height anteriorly (Tr. 361-62).

In mid-January 2005, Plaintiff underwent EMG studies of his back and legs (Tr. 358-59).

The EMG studies showed that the muscles of both legs were normal but the EMG studies of the

paravertebral lumbar muscles revealed some mild denervation in the lower paravertebral lumbar

muscles, which was suggestive of possible damage to the S1 nerve root bilaterally (Tr. 359).

In February 2005, Plaintiff saw Dr. Hodges for a follow up of his back pain and with new

reports of bilateral leg pain (Tr. 348).  Upon exam, Dr. Hodges noted that Plaintiff had a normal

gait, negative straight leg raising, and normal strength (5/5) for his lower extremities (Tr. 348).

Dr. Hodges recommended a discogram at L3-5 and adjusted Plaintiff's medications (Tr. 348).

In March 2005, Plaintiff returned to see Dr. Hodges with continued complaints of back

and bilateral leg pain (Tr. 347).  Plaintiff rated his pain at a 10, on a scale of 0 - 10 (Tr. 347).  Dr.

Hodges performed no physical exam at this visit and again advised Plaintiff to obtain a

discogram (Tr. 347).

Two weeks later in March 2005, Plaintiff returned to see Dr. Hodges after undergoing the

discogram (Tr. 346).  Dr. Hodges noted that discogram results as finding that the L3-4 disc was

"perfectly normal" and was, thus, not a pain generator (Tr. 346).  However, the L4-5 disc had a

posterior annular tear and appears to be a significant pain generator (Tr. 346).  Dr. Hodges

adjusted Plaintiff's medication regimen (Tr. 346).  Later in March 2005, Dr. Hodges discussed a

8

possible L4-S1 laminectomy/foraminotomy (Tr. 344-45).

In early May 2005, Plaintiff saw Dr. Hodges with complaints of back pain (Tr. 342). Upon examination, Dr. Hodges noted that Plaintiff's straight leg raising was negative and his lower extremity motor strength was normal (Tr. 342). Examination of his left shoulder showed decreased range of motion and impingement (Tr. 342).

In mid-May 2005, Plaintiff presented with complaints of left shoulder pain, which he reported started two weeks prior (Tr. 203). He indicated that it began after lifting and that, while it was a "deep" pain, it did not radiate (Tr. 203). Upon exam, Dr. Justo found that Plaintiff had back pain and joint stiffness, but that he had a normal gait, and no tenderness in his major joints (Tr. 201, 203). Dr. Justo diagnosed Plaintiff with adhesive capsulitis of his shoulder[1] or "frozen shoulder" (Tr. 201).

Later in May 2005, Dr. Hodges reviewed Plaintiff's recent diagnostic study results with Plaintiff (Tr. 341). Dr. Hodges advised Plaintiff that his recent cervical spine MRI showed a broad-based disc herniation at C6-7 which resulted in stenosis with a mild effect on the left C-7 nerve root and a diffuse disc bulge at C4-5 and C5-6 which resulted in canal stenosis with a mild effect on the C-6 nerve roots (Tr. 341, 354-55). An MRI of Plaintiff's left shoulder showed

---

[1] Adhesive capsulitis (also known as "frozen shoulder"), is a condition characterized by stiffness and pain in your shoulder joint. See definition of Adhesive capsulitis, MayoClinic.com http://www.mayoclinic.com/health/frozen-shoulder/DS00416 (Last visited June 6, 2009). Signs and symptoms begin gradually, worsen over time and then resolve, usually within a two-year period. Id. Your risk of developing frozen shoulder increases if you've recently had to have your arm in a sling for several weeks, or if you have had surgery in which your arm was immobilized in a specific position for a prolonged period. Id. Treatment for frozen shoulder involves stretching exercises and, sometimes, the injection of corticosteroids and numbing drugs into the joint capsule. Id. In a small percentage of cases, surgery may be needed to loosen the joint capsule so that it can move more freely. Id. (Doc. 14, Commissioner's Brief at p. 6).

9

avascular necrosis (AVN) of the superomedial humeral head; AC joint capsular hypertrophy and mild craniad effacement of the underlying supraspinatus; and a small joint effusion (Tr. 341, 356). Dr. Hodges referred Plaintiff to Dr. Todd Bell regarding his shoulder (Tr. 341).

In June 2005, Plaintiff returned to see Dr. Hodges regarding his complaints of back pain (Tr. 338). Upon exam, however, Dr. Hodges again found Plaintiff to have negative straight leg raising and normal (5/5) lower extremity motor strength (Tr. 338). Dr. Hodges noted that Plaintiff should continue pain management and start physical therapy (Tr. 339). He assessed that no surgery was required for Plaintiff's lumbar spine and for Plaintiff to follow up with him on an as needed basis (Tr. 339).

Later in June 2005, Plaintiff went to his local emergency room, complaining of left knee and back pain after falling down his stairs (Tr. 176-79). Knee x-rays revealed no fractures while the lumbar x-ray showed an old mild compression deformity; he was treated and released (Tr. 176-79).

Later in June 2005, Plaintiff saw Dr. Hodges again (Tr. 337). Dr. Hodges noted that while Plaintiff's cervical spine MRI findings were quite remarkable, his symptoms and examination findings were "not very significant" (Tr. 337).

In late June 2005, Plaintiff saw Dr. Hodges PA with complaints of left knee pain (Tr. 335). Plaintiff reported no relief from the left knee arthroscopy Dr. King performed (Tr. 335). The PA observed Plaintiff's gait to be normal (Tr. 335), as well as Plaintiff's hip rotation, straight leg raising, and coordination (Tr. 336). He assessed Plaintiff's sensation as without deficit (Tr. 336). Knee x-rays performed in the office were normal and the PA could identify no specific pathology (Tr. 336). He recommended a left knee MRI (Tr. 336).

10

In July 2005, Plaintiff saw Dr. Hodges' PA for a follow up regarding his knee pain/weakness complaints (Tr. 333). The PA observed Plaintiff to walk with a mildly antalgic gait due to weakness, but noted that Plaintiff had negative straight leg raising, normal hip rotation, no sensory deficits, no muscle atrophy, smooth coordination, no knee crepitation, knee range of motion from 0 - 135 degrees, and "no detectable weakness" (Tr. 333). The PA reviewed Plaintiff's left knee MRI results advising that Plaintiff had relatively early stage osteonecrosis of the posterior aspects of the lateral and medial femoral condyles; ill-defined horizontal tear of the far posteromedial corner of the medial meniscus; a small joint effusion; and mild chondromalacia patella (Tr. 334, 353).

Later in July 2005, Plaintiff saw one of Dr. Hodges' colleagues, Robert D. Mastey, M.D., at the Center for Sports Medicine and Orthopaedics with complaints of left shoulder pain (Tr. 365-68). Plaintiff described his shoulder pain as annoying and that it would come and go (Tr. 365). Upon exam, Dr. Mastey noted that Plaintiff's cervical spine had a full range of motion (Tr. 366). His right shoulder also had full range of motion and normal strength (Tr. 366). His left shoulder had some tenderness and some mild pain with range of motion testing but a negative impingement sign (Tr. 366). He had normal strength in his wrists and fingers (Tr. 336-37). Upon exam of this thoracic spine, Dr. Mastey observed no tenderness and full range of motion (Tr. 367). Dr. Mastey also noted that Plaintiff had a normal gait and full range of motion and strength in his lower extremities (Tr. 367). Dr. Mastey injected DepoMedrol into Plaintiff's left shoulder, he also advised Plaintiff to undergo physical therapy for two weeks, and prescribed a new pain medication (Tr. 367). Dr. Mastey advised Plaintiff to return in two months for a re-evaluation (Tr. 367).

In August 2005, Plaintiff saw Dr. Justo for hypertension and for a follow-up regarding his back pain (Tr. 188). Dr. Justo's exam was positive for back pain but negative for arthralgias or myalgias (Tr. 188). Dr. Justo also noted that he had a supple neck with full range of motion, and normal gait with no tenderness in his major joints (Tr. 186).

In October 2005, Plaintiff saw Dr. Justo with complaints of low back pain which started the previous day (Tr. 185). Plaintiff explained that his back pain was chronic, but intermittent with the current acute exacerbation (Tr. 185). He reported that the pain did not radiate (Tr. 185). Upon exam, Dr. Justo found that Plaintiff had back pain and joint stiffness but no arthralgias or myalgias (Tr. 185). She further found that while Plaintiff had positive straight leg raising, he had full muscle strength in his lower extremities (5/5) and full range of motion in his low back (Tr. 184). Dr. Justo prescribed pain mediation (Tr. 183).

In December 2005, Plaintiff saw Dr. Justo again with complaints of back pain (Tr. 182). Upon exam, Dr. Justo found that Plaintiff had back pain and joint stiffness but no arthralgias or myalgias (Tr. 182). She also observed Plaintiff to have a normal gait (Tr. 181).

In 2006, the record shows that Plaintiff's only treatment was seeing Charlie R. Adcock, M.D., on two occasions. Specifically, in February 2006, Plaintiff saw Dr. Adcock regarding his complaints of back pain (Tr. 372). Dr. Adcock noted that he received no records documenting Plaintiff's back condition, other than what Plaintiff typed out for him (Tr. 372). Dr. Adcock noted that Plaintiff had muscle spasm in his back and indicated that he wanted narcotic medication for it (Tr. 372). Dr. Adcock noted that this request was again refused (Tr. 372). Plaintiff told Dr. Adcock he was trying to get disability; Dr. Adcock advised Plaintiff again that he needed records (Tr. 372). In May 2006, Dr. Adcock handwrote that he had "<u>no</u>" records to

substantiate his (Plaintiff's) claims (Tr. 372).

In March 2006, another state agency reviewing physician, Carol A. Lemeh, M.D., reviewed Plaintiff's record and opined that Plaintiff could perform medium level work (occasionally lift 50 pounds, frequently lift 25 pounds, stand/walk about six hours in an eight hour workday, and sit about six hours in an eight hour workday) (Tr. 257, 263). Dr. Lemeh opined that Dr. Mullady's opinion was too restrictive given the objective medical findings since he rendered his opinion (Tr. 263).

In October 2006, Plaintiff returned to see Dr. Adcock regarding his back and neck (Tr. 370). He reported that he was trying to get disability (Tr. 370). Plaintiff advised Dr. Adcock that he wanted his disability papers filled out again without the sentence stating that "I have no medical records to document any of these findings" (Tr. 370). Dr. Adcock then noted that he had asked Plaintiff to fill in the blanks as he could not ascertain how much Plaintiff could or could not do (Tr. 370). Dr. Adcock noted that Plaintiff was having radicular symptoms and that he also had a sebaceous cyst on his left upper back which Dr. Adcock offered to excise (Tr. 370). Dr. Adcock advised Plaintiff to continue his routine medications (Tr. 370).

In March 2008, Plaintiff returned to see Dr. Mullady for another consultative physical examination, at the request of the SSA (Tr. 521-30). This time, Plaintiff complained of his back and his legs (Tr. 521). Dr. Mullady noted that Plaintiff made no mention of his knees (Tr. 523). He reported that, two months prior, he fell at home in the dark and fractured his left foot (Tr. 521). Dr. Mullady reviewed Plaintiff's cervical and lumbar spine MRIs (Tr. 521-22). Upon examination, Dr. Mullady found Plaintiff to have a normal neck exam, including normal range of motion (Tr. 522-23). While Dr. Mullady found Plaintiff to have decreased range of motion in his

13

lumbar spine, he was able to straight leg raise to 90 degrees bilaterally in the supine position (Tr. 523). Otherwise, range of motion testing was normal in all joints throughout, including his knees (Tr. 523). His gait demonstrated a slight left leg limp and Plaintiff indicated that he used a cane at home for balance because of back pain but did not bring it with him to the examination (Tr. 523). Muscle strength in all his extremities, including his grip, was normal (Tr. 523). Deep tendon reflexes were normal and there were no sensory deficits and his balance was normal (Tr. 523). Dr. Mullady opined that, based on his clinical examination findings, Plaintiff could occasionally lift up to 20 pounds and occasionally carry up to 10 pounds; stand for two hours in an eight hour workday; walk for one hour in an eight-hour workday; and sit for a total of about six hours in an eight-hour workday (Tr. 524-25). Dr. Mullady opined that Plaintiff did not need to use a cane (Tr. 525).

Plaintiff's Testimony

At his hearing, Plaintiff testified that he experiences severe pain on a constant basis, such that he could stand for no more than 10 minutes at a time, and that he needs to lay down during the day "for an hour or 2." (Tr. 536-37).

Vocational Expert Testimony

A vocational expert testified at the hearing that there were jobs Plaintiff could perform if he could perform a full range of sedentary work, as found by the ALJ, but if Plaintiff were indeed limited to the extent described in his testimony, he would be precluded from performing any occupation. (Tr. 540).

Analysis

14

Plaintiff argues the ALJ's credibility determination is not supported by substantial evidence. He points to the part of the decision which acknowledged Plaintiff's impairments could reasonably cause the symptoms to which Mr. Whitson testified but nevertheless found Plaintiff's statements "are not credible" to the extent that they are inconsistent with an ability to perform sedentary work on a sustained basis (Tr. 18-19). At the hearing, Plaintiff testified he experiences severe pain on a constant basis, such that he could stand for no more than 10 minutes at a time, and that he needs to lay down during the day "for an hour or 2." (Tr. 536-37). If accepted as true, the VE testified there were no jobs Plaintiff could perform with that level of pain (Tr. 540). However, the ALJ did not accept those allegations of pain and found Plaintiff capable of a full range of sedentary work. For reasons that follow, I conclude the ALJ's credibility determination was supported by substantial evidence.

Plaintiff alleged disability due to cervical and lumbar pain, left knee pain, right shoulder pain, bipolar disorder, and hypertension (Tr. 141). Plaintiff confines his discussion to allegations of cervical and lumbar pain and left knee and right shoulder pain. Plaintiff points to a portion of the transcript of the hearing arguing Plaintiff did not testify to "weekly" falls and the ALJ was mistaken in so stating (Tr. 19). Plaintiff testified that he had fallen approximately two days prior to the hearing; he then answered affirmatively when asked whether he falls "on a regular basis;" and when asked to quantify how frequently (Mr. Whitson was asked whether he falls once weekly), he answered "quite often." (Tr. 538). Thus his response was not that he fell once a week but "quite often" (Tr. 538). It does appear the ALJ was not precisely accurate in his comment that there was no evidence to document "weekly" falls, when the proper finding would have been a lack of evidence to support falls that occur quite often. I do not consider that error to

be controlling in light of the other evidence relied on by the ALJ.

Plaintiff acknowledges the ALJ does cite several medical records suggesting that Plaintiff's balance and sensory difficulties were not as severe as reported. However, Plaintiff argues the decision does not mention that Mr. Whitson did report falls to his doctors in October 2004, June 2005, and October 2005. In October 2005 plaintiff complained of back pain, precipitated by lifting. Plaintiff reported the pain occurred at his home and a contributing factor may have been a recent fall. No detail is given for the reason for the fall. In June 2005 Plaintiff complained of intermittent left knee pain, present for two years. Plaintiff stated this pain caused him to fall. He reported difficulty with stairs and walking on uneven ground. However, on physical examination he appeared to be healthy and in no apparent distress. In October 2004, Plaintiff reported hurting in the low back, worse over the last 2 days but noted he ran out of meds. He reported difficulty walking, not falling (Tr.185, 315, 479). Plaintiff argues these reports corroborate his hearing testimony. He further argues objective evidence, that went unmentioned in the decision, also supports Plaintiff's testimony. Plaintiff points to a nerve conduction study ("NCS") in January 2005 which revealed mild denervation of the lower paravertebral lumbar muscles, "suggestive of possible damage to the S1 nerve roots bilaterally." (Tr. 359). Plaintiff notes this testing is consistent with an MRI of the lumbar spine showing a disc protrusion at the L5-S1 level causing likely S1 nerve root compromise (Tr. 361-362). However, the January EMG study also shows the muscles of both legs are within normal limits and the peronela nerve conduction study was with normal limits (Tr. 359).

Plaintiff specifically claims disability on account of pain in his neck, left shoulder, left knee, and low back; the clinical examination findings of record do not support his claims.

16

Plaintiff claims disability on account of his neck condition (Doc. 12, Plaintiff's Memorandum at 4). However, as the ALJ noted, while Dr. Hodges found Plaintiff's cervical disc herniation, Dr. Hodges also found that Plaintiff's symptoms and examination findings were "not very significant" (Tr. 19, 337). Moreover, throughout the record, examination findings showed Plaintiff's neck to function normally. For example, Plaintiff's treating physician Dr. Justo repeatedly observed Plaintiff to have a supple neck with full range of motion (5/04–Tr. 198; 6/04–Tr. 193; 8/05–Tr. 186). Similarly, in July 2005, Dr. Mastey found Plaintiff to have full range of motion in his neck (Tr. 366).

In addition, during both consultative exams, Dr. Mullady found Plaintiff's neck function to be normal, including normal range of motion (7/04–Tr. 145; 3/08–Tr. 522-53). These findings support the ALJ's determination that despite Plaintiff's complaints regarding his neck condition, he was still capable of performing sedentary work. Plaintiff has failed to show otherwise. *See* 20 C.F.R. § 416.912 (burden of proof is on claimant to prove that he is disabled and to provide evidence (i.e. medical treatment and examinations) to show he is disabled).

Next, Plaintiff claims disability on account of his left shoulder condition. While Plaintiff had some complaints of shoulder pain in May and July of 2005 (characterizing it as "annoying" and that it would come and go) (Tr. 203, 365), upon exam in July 2005, Dr. Mastey found Plaintiff to have only some mild pain with range of motion testing, but with a negative impingement sign (Tr. 366). The record shows no more complaints of shoulder pain through the ALJ's June 2008 decision. Plaintiff's complaints did not affect his upper extremity strength or range of motion as both Dr. Mastey (Tr. 367), and Dr. Mullady found (Tr. 145, 523). I conclude these findings support the ALJ's findings that, despite his shoulder complaints, Plaintiff was

capable of performing sedentary work.

Plaintiff also claims disability on account of his left knee condition. In October 2004, Plaintiff complained of left knee pain (Tr. 305). An MRI showed that Plaintiff had a tear in his medial meniscus and a left knee arthroscopy was performed to correct the problem (Tr. 304). The surgery was successful as just one month later, in November 2004, Plaintiff reported he was "pleased" and that he was doing "much better" (Tr. 303). He made the same reports in December 2004 (Tr. 300). He made no complaints of knee pain again until he fell down his stairs in June 2005 (Tr. 176, 178). However, when Plaintiff saw Dr. Hodges' PA in June and July 2005 with complaints of knee pain, the PA reported normal clinical examination findings (i.e., normal gait, normal straight leg raising, normal range of motion, normal coordination, no knee crepitation, and "no detectable weakness") (Tr. 333). Subsequently, Drs. Mastey, Justo, and Mullady made similar findings (i.e, normal gait, full range of motion and strength in lower extremities, etc). (Tr. 7/05–Tr. 367; 8/05–Tr. 186; 10/05–Tr. 184; 3/08–Tr. 523). No more complaints of knee pain are documented from July 2005 through the date of the ALJ's June 2008 decision. This evidence undermines Plaintiff's complaints of disabling limitations on account of his knee condition and provided support for the ALJ's finding that Plaintiff could perform sedentary work.[2]

Plaintiff also claims disability on account of his back condition. Plaintiff does not

_____

[2] These mostly normal lower extremity findings also undermined Plaintiff's allegations that he fell "quite often," as did the findings of normal balance (despite the lack of sensation over the surface of both legs) and otherwise no sensory deficits (Tr. 146, 333, 336, 523, 538). Moreover, despite Plaintiff's allegations of falling "quite often," the record does not document such a frequency of falls (Tr. 538). Rather, the record shows a report of a fall in June 2005, (due to his knee) (Tr. 315) and, in October 2005, Plaintiff reported a recent fall to Dr. Justo (Tr. 185).

explain why he would not be able to perform sedentary work with his condition. The record shows that his back pain complaints were treated with medications. At one point Dr. Hodges discussed surgery as a possible option (Tr. 344-45). However, three months later, Dr. Hodges indicated that no surgery was required for Plaintiff's lumbar spine and that instead, he should continue pain management and start physical therapy (Tr. 339). Surgery was never mentioned again. Despite his complaints of severe back pain, upon exam, he consistently had a normal gait (Tr. 181, 186, 92, 201, 335, 342, 348-49, 367), and on most occasions his straight leg raising testing did not produce any pain (7/04–straight leg raising to 80 degrees–Tr. 145; 12/04–negative straight leg raising-Tr. 349; 2/05–negative straight leg raising-Tr. 348; 5/05–straight leg raising negative–Tr. 342; 6/05–Tr. 338; 6/05–normal straight leg raising–Tr. 336; 7/05–negative straight let raising–Tr. 333; 3/08-straight leg raising to 90 degrees–Tr. 523). These mostly normal findings undermine Plaintiff's complaints of disabling back pain. In any event, the ALJ gave Plaintiff the benefit of the doubt and limited him to only sedentary work (as found by Dr. Mullady on two occasions) despite the fact that one state agency reviewing physician found that Plaintiff could perform light level work and another found he could perform medium level work (Tr. 20, 146, 148, 151-52, 257, 263). Further, as the Commissioner argues, there are no opinions of record which support his disability claim. It appears that, in 2008, he asked Dr. Adcock to fill out disability papers for him. Dr. Adcock declined, as he did not have any records to substantiate his claims (Tr. 370, 372).

In making his credibility determination the ALJ deals with Plaintiff's allegation of constant back and knee pain:

19

The claimant testified he experiences constant back pain, as well as knee pain. He testified he falls frequently, about one time per week. After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

Treating and examining sources have noted decreased lumbar range of motion; however, despite cervical disc herniation, Dr. Hodges found symptoms and examination not significant. Dr. Mullady found not only normal motion of the cervical spine, but also noted the claimant made no mention of knee pain in reporting his history and exhibited normal motion of both knee joints. Dr. Mastey also pointed out that despite a diagnosis of avascular necrosis relative to the left shoulder, the claimant was asymptomatic relative to that condition. There is no evidence to document weekly falls as suggested in his testimony during the hearing, and in March 2008 the claimant reported to Mr. Mullady that he had fallen a few months earlier. Dr. Mullady found only a slight left leg limp with normal muscle strength in all extremities. In July 2004, the claimant alleged a total loss of sensation in the lower extremities when he was examined by Dr. Mullady; however, in March 2008 Dr. Mullady found no sensory deficits. The claimant reported to Dr. Mullady that he used a cane when at home for balance difficulties resulting from back pain; however, on examination balance was normal. Considering the nature of the claimant's impairments, it would seem reasonable to expect that he would experience some degree of discomfort and limitation; however, there is simply no evidence to suggest that her [sic] symptoms are of the severity and frequency to preclude all work activity.

As for the opinion evidence, no treating source has assessed functional limitations. Dr. Mullady assessed limitations most consistent with sedentary work in July 2004 and again in March 2008.

Tr. 19.

Although the ALJ was not completely accurate in his assessment of Plaintiff falling one time per week, the actual testimony of plaintiff was that he fell quite often. The ALJ relied on the medical record in finding Plaintiff's statements not to be credible. As seen above, he relied on opinions of Drs. Hodges and Mullady who found normal motion of the cervical spine and no mention being made of knee pain. He relied on Dr. Mastey. He also relied on Dr. Mullady's

finding of a slight left leg limp with normal muscle strength in all extremities in spite of an

allegation of a fall a few months earlier. He noted Plaintiff claimed total loss of sensation in the

lower extremities even though in March 2008 Dr. Mullady found no sensory deficits. Dr.

Mullady found Plaintiff's balance on examination to be normal in his July 2004 examination.

Although Plaintiff reported use of a cane at the July 2004 examination, he did not bring the cane

to the examination. Dr. Mullady noted Plaintiff could walk without the use of the cane and that

use of the cane was not essential (Tr. 525). The ALJ noted this in his opinion. On the whole, I

conclude the ALJ's credibility decision is supported by substantial evidence in the record.

Plaintiff's argument that the record supports Plaintiff's testimony fails; to the extent some

evidence in the record may support Plaintiff's claims of disabling pain, this Court cannot reverse

the decision of the ALJ based upon that evidence if, as here, the Court finds substantial evidence

exists supporting the ALJ's decision. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v.

Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).

Conclusion

21

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, I conclude that there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner denying Plaintiff's application for benefits. Accordingly, I RECOMMEND:

(1)     The Plaintiff's motion for judgment on the pleadings (Doc. 11) be DENIED;

(2)     The Defendant's motion for summary judgment (Doc. 13) be GRANTED;

(3)     A judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure AFFIRMING the Commissioner's decision which denied benefits to Plaintiff; and,

(4)     This action be DISMISSED.[3]

Dated:  November 23, 2009          *s/William B. Mitchell Carter*
                                   UNITED STATES MAGISTRATE JUDGE

---

[3]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).